UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Samuel J. Bourne


        v.                          Civil No. 05-cv-365-JD
                                    Opinion No. 2007 DNH 065

Town of Madison et al.


O R D E R

At the center of this lawsuit is an access road, the
"Solomon Harmon Road," that connects Samuel J. Bourne's property
to a public road in the town of Madison, New Hampshire.  Bourne
alleges that, in the course of disputing Bourne's and the town's
respective rights and obligations with respect to the access
road, the town, its board of selectmen, and another individual,
violated state law and Bourne's state and federal constitutional
rights.  Pending before the court are three motions in limine
filed by the defendants and one motion in limine filed by the
plaintiff.


Bourne's Motion

Bourne moves to exclude any evidence relating to a domestic
dispute that required his appearance before a Massachusetts
probate court in 1994.  The defendants have not filed an
objection to this motion.  According to Bourne, counsel for the

defendants stated that he does not intend to introduce any evidence of the domestic dispute, "but [he] objects to this motion to the extent it would foreclose the possibility of him doing so, should Mr. Bourne somehow 'open the door' regarding this issue." Pltff's Mot. at 2-3. The court grants Bourne's motion to exclude subject to any development at trial that may warrant reconsideration of this ruling.

Defendants' Motions

The defendants have filed three motions in limine. First, the defendants seek to exclude all evidence relating to the town's initial denial to issue and later revocation of Bourne's building permit, its denial of Bourne's subdivision application, and the removal of two gates Bourne erected across the Solomon Harmon Road. Second, the defendants move to exclude any evidence relating to the town's interference with Bourne's attempts to make improvements on the Solomon Harmon Road. Third, the defendants move to exclude expert testimony.

The defendants' first motion merely reiterates the same arguments already advanced in the defendants' motion for summary judgment. Arguing that Bourne cannot succeed on his federal constitutional claims, the defendants argue that the court should exclude the evidence outlined above because it is not relevant

under Rule 401 of the Federal Rules of Evidence.[1]  The
defendants' arguments, which attack Bourne's allegations
piecemeal, overlook that Bourne has alleged a pattern of
misconduct by the defendants.  His federal and state
constitutional claims are not based on discrete actions by town
officials but on his allegations of a larger conspiratorial
scheme by the defendants to drive him off of his property.  The
defendants do not explain why evidence pertaining to permit
denials, subdivision denials, and the removal of Bourne's gates,
is irrelevant to this theory.

As of the present time, the defendants have not articulated
any argument for dismissing Bourne's state constitutional
claims.[2]  Thus, even assuming the court dismisses the federal
constitutional claims, the defendants have presented no argument
for why the evidence they seek to exclude would not be relevant
to the state claims if they remain pending.  The court

---

[1]Under Rule 401, evidence is relevant if it has "any
tendency to make the existence of any fact that is of consequence
to the determination of the action more probable or less probable
than it would be without the evidence."  Fed. R. Evid. 401.  The
threshold for relevance under Rule 401 is "very low."  United
States v. Ford, 22 F.3d 374, 381 (1st Cir. 1994).

[2]Bourne alleges violations of his rights to due process and
equal protection under Part I, Articles 1 and 14 of the New
Hampshire constitution.  The court has directed the defendants to
brief more fully their summary judgment argument as to these
claims.

accordingly denies the defendants' motion to exclude evidence
relating to the town's denial and revocation of Bourne's building
permits, its denial of his subdivision application, and its
removal of his gates.

The defendants' second motion seeks to exclude evidence
concerning Bourne's disputes with the town over maintenance of
the Solomon Harmon Road.  The defendants contend that the
maintenance of the road has been subject to ongoing oversight by
the Carroll County Superior Court and that the superior court
issued a definitive ruling on the matter on January 15, 2004.
The defendants' argue that collateral estoppel and the Rooker-
Feldman doctrine, see Rooker v. Fid. Trust Co., 263 U.S. 413
(1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983),
preclude consideration of this issue here.

Under New Hampshire law, a party seeking to invoke
collateral estoppel must satisfy three conditions:  "(1) the
issue subject to estoppel must be identical in each action; (2)
the first action must have resolved the issue finally on the
merits; and (3) the party to be estopped must have appeared as a
party in the first action, or have been in privity with someone
who did so."  Stewart v. Bader, 907 A.2d 931, 937 (N.H. 2006).
Consideration of these factors aids in answering the overarching
question -- whether the party to be estopped "had a full and fair

4

prior opportunity to litigate the issue or fact in question."
Id.

Here, it is immediately apparent that the second factor has
not been satisfied.  In the superior court's January 15 order, it
considered motions by both Bourne and the town concerning
maintenance of the Solomon Harmon Road.  The superior court
denied Bourne's motions for injunctive relief and for contempt,
and granted the town's motion for a preliminary injunction.
Bourne was "enjoined from making any improvements in the Solomon
Harmon Road except in accordance with the provisions" set forth
in an earlier letter from Madison's town counsel to Bourne's
former attorney.  Bedrock Realty Trust v. Town of Madison, Nos.
03-E-061, 114, 144 (O'Neill, J.) (Carroll County Sup. Ct. Jan.
15, 2004).

The superior court's January 15 order does not purport to
enter a final judgment in the case.  Both parties have
represented in filings to this court that a trial was held in
March of 2007, and that a ruling from the superior court is still
pending.  Thus, the superior court has not yet "resolved the
issue finally on the merits." Putnam Lumber Co. v. Eddie Nash &
Sons, Inc., 690 A.2d 570, 571 (N.H. 1997) (holding that
collateral estoppel did not apply where the "court order in
question decided some, but not all, of the issues in the

proceeding before it").  The defendants' <u>Rooker-Feldman</u> argument
cannot succeed for similar reasons.  When a federal case "is
initiated <u>before</u> state proceedings have ended, then--even if the
federal plaintiff expects to lose in state court and hopes to win
in federal court--the litigation is parallel, and the <u>Rooker-
Feldman</u> doctrine does not deprive the court of jurisdiction."
<u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del
Trabajo de Puerto Rico</u>, 410 F.3d 17, 24-27 (1st Cir. 2005)
(discussing the tightening of <u>Rooker-Feldman</u>'s finality
requirement following the Supreme Court's ruling in <u>Exxon Mobil
Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280 (2005)).

The defendants' third motion seeks to exclude the testimony
of Bourne's handwriting expert.  As explained above, the town's
handling of Bourne's request for a building permit is relevant to
Bourne's state and federal constitutional claims.  One allegation
in support of these claims is that the town forged Bourne's
signature on a document and then submitted that falsified
document to a state trial court.  Resolution of this motion
requires a brief synopsis of the relevant factual background.

While Bourne was negotiating the purchase of his property in
Madison, he was informed by the town that to obtain a building
permit he would need to execute a waiver agreement relieving the
town from maintenance responsibility and from liability arising

from the Solomon Harmon Road.  After receiving the town's standard form waiver agreement, Bourne's attorney revised it to add terms favorable to Bourne.  In particular, a term was added declaring that Bourne could exclude public access to the Solomon Harmon Road.  Bourne mailed the revised waiver agreement back to the selectmen with a signed cover letter.  The parties dispute the substance of the cover letter and have each submitted what they claim to be the genuine cover letter received by the selectmen.  Bourne's version of the cover letter draws attention to the revisions in the waiver agreement, while the defendants' version does not.  The defendants contend that they assumed that Bourne had simply signed the standard form waiver agreement, without change, and they therefore unwittingly signed and notarized it on August 28, 2002.

After the selectmen became aware of the terms added by Bourne, they wrote a letter to Bourne calling the agreement "void."  Bourne's building permit request was denied because, among other things, the waiver agreement was void.  The town subsequently filed suit in the Carroll County Superior Court seeking rescission of the revised waiver agreement and offered, as evidence, its version of the Bourne cover letter with what purports to be Bourne's signature.  Although that lawsuit was ultimately settled, Bourne alleges that the town's creation of a

forged cover letter and its submission of that letter to the superior court is evidence of the defendants' conspiratorial scheme.

Bourne's proposed expert witness, Ronald Rice, intends to testify on two separate topics.  First, he will testify that the town's version of the cover letter contains a forgery of Bourne's signature.  Second, he will testify that the computer generated characters on the town's version of the cover letter are consistent with the computer generated letters on other documents that are known to have been created by the town.  The defendants argue that the court should exclude Rice's testimony because he is not qualified as an expert on the relevant subjects and because his methodology is unreliable.

Under Rule 702 of the Federal Rules of Evidence, the court serves as a gatekeeper, "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).  The proponent of an expert witness bears the burden of laying a foundation establishing that the witness is qualified to give an expert opinion on the subject in question, see 29 Charles A. Wright & Victor J. Gold, Federal Practice & Procedure § 6265 & n.42 (1997) (citing Apostol v. United States,

838 F.2d 595, 599 (1st Cir. 1988)), and that the expert's
proposed testimony is relevant and reliable, see Ruiz-Troche v.
Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 85 (1st Cir.
1998).  That said, so long as "an expert's scientific testimony
rests upon 'good grounds, based on what is known,'" Rule 702 does
"not require that [the proponent] carry the burden of proving to
the judge that the expert's assessment of the situation is
correct."  Id. (quoting Daubert, 509 U.S. at 590).

Expert testimony must be relevant "not only in the sense
that all evidence must be relevant, see Fed. R. Evid. 402, but
also in the incremental sense that the expert's proposed opinion
. . . likely would assist the trier of fact to understand or
determine a fact in issue."  Ruiz-Troche, 161 F.3d at 81.  Expert
testimony will be deemed reliable so long as "(1) the testimony
is based upon sufficient facts or data, (2) the testimony is the
product of reliable principles and methods, and (3) the witness
has applied the principles and methods reliably to the facts of
the case."  Fed. R. Evid. 702.  The Supreme Court has recognized
four indicia of reliability:  (1) whether the expert's theory can
or has been tested; (2) whether the theory has been the subject
of peer review; (3) whether the theory has been generally
accepted in the relevant scientific community or industry; and
(4) with respect to a particular technique, whether and to what

extent there is a known or potential rate of error, and whether
there are standards controlling the operation of the technique.
Daubert, 509 U.S. at 592-94.  These non-exclusive factors "form
the basis for a flexible inquiry into the overall reliability of
a proffered expert's methodology."  Ruiz-Troche, 161 F.3d at 81.
It is the expert's methodology, as opposed to his conclusions,
which "remains the central focus of a Daubert inquiry."  Id.

        The defendants' challenge to Rice's qualifications are well-
founded.  While Rice maintains that he is a qualified handwriting
expert, he has repeatedly conceded that he is not a document
examiner.  See Rice Aff. ¶ 24; Rice Dep. 13:3-18, 45:14-46:5,
102:18-20, 104:2-8.  An expert's specialized knowledge on one
subject does not qualify him to testify on a different subject.
See Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 18 (1st
Cir. 2001) (upholding the district court's decision to limit an
expert to testifying only as to subjects within his knowledge and
experience).  Bourne's objection and surreply in opposition to
the defendants' motion in limine does not provide any argument
concerning Rice's qualifications to testify as to the origin of
the document containing the alleged forgery.  The court therefore
finds that Rice is not qualified to testify on that topic.
Although the court also has misgivings concerning Rice's
qualifications as a handwriting expert, that question is closer.

The court will assume arguendo that Rice is qualified to testify as to the authenticity of the signature on the town's version of the cover letter and proceed to consider Rice's methodology.

Rice examined the questioned signature and the comparison signatures (i.e., samples of "known" Bourne signatures) by photocopying the original documents and enlarging them at increments of 200 percent.  He recopied and enlarged each specimen until he arrived at a size suitable for examination. The defendants, through their own expert, Alan Robillard, criticize this enlargement technique.  Robillard states that Rice's method is flawed because it distorts the image by adding photocopy toner to the resulting image and may change "the spatial relationships within the image."  Robillard Aff. ¶ 9. Robillard further states that Rice's methodology of enlargement is "inconsistent with the accepted methodology among forensic document examiners," which is to view the original document through the use of a microscope.  Id. ¶¶ 7-9.  According to Robillard, one key aspect of handwriting comparison is to compare the areas at which pen pressure is placed on a given letter.  A forensic document examiner determines where the pressure was placed by examining which points of the letter are bolder or fainter.  The addition of photocopy toner can distort the relative boldness and faintness in a handwriting specimen,

11

particularly when there have been multiple iterations of copying.
<u>Id.</u> ¶¶ 12-13.

Bourne's response to the defendants' argument for exclusion
is not creditworthy.  First, Bourne quotes a practitioners'
handbook for the proposition that it "is within the discretion of
the court to require a witness to point out upon <u>enlarged</u>
<u>photographs</u> the difference between the signatures in dispute and
those admitted to be genuine."  Pltf's Obj. at 7 (quoting Robert
S. Hunter, <u>Federal Trial Handbook: Civil</u> § 50:3 (4th ed. 2006)
(emphasis added by plaintiff)).[3]  The above-quoted discussion,
however, appears to be directed at the permissible use of a
photocopy enlargement of a signature for demonstrative purposes
at trial; it says nothing about the permissible use of photocopy
enlargement for expert analysis of a signature.  Further on, the
handbook states, "enlarged photographic copies . . . of a
signature in issue, are admissible in evidence for purposes of
comparison [only] when accompanied by <u>competent preliminary proof</u>
<u>as to their accuracy</u> and the circumstances under which they were
made."  <u>Id.</u> § 50:5 (emphasis added).  Bourne has not established

---

[3]Bourne cites the 2005 printing of the handbook, but the
court was unable to locate that version.  The court refers
instead to the 2006 printing.

that Rice's photocopies are an "accurate, and truthful representation of the writing in question."  Id.

Second, Bourne misrepresents a passage in a manual concerning forensic investigation published by the Federal Bureau of Investigation.  Bourne claims that "the F.B.I. itself sanctions the use and analysis of photocopies in the examination of questioned documents."  Pltf's Obj. at 7 (quoting Colleen Wade and Yvette E. Trozzi, Federal Bureau of Investigation, Handbook of Forensic Services at 100 (2003)).  But upon review of that excerpt, it is plain that it concerns the extent to which a particular photocopy can be traced to a particular photocopy machine.  The handbook says nothing about the use of photocopy enlargements for handwriting comparison.[4]

Finally, Rice himself states that the "use of enlargements by using a photocopier is a standard and acceptable procedure within the profession."  Rice Aff. ¶ 42.  The court finds Rice's testimony on this point not credible, and, in any event, Rice's "unadorned assertions" are insufficient to rebut the defendants' challenge.  Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995).  In sum, Bourne has not made a sufficient

---

[4]Plaintiff's counsel is cautioned that he has an obligation to the court to characterize accurately any evidence he refers to.

13

showing that Rice's methodology for determining the authenticity of the signature is reliable.  Cf. United States v. Brien, 59 F.3d 274, 277 (1st Cir. 1995) (upholding district court's exclusion of expert testimony where the proponent of the testimony failed to present underlying data in support of the expert's opinion); Daubert, 43 F.3d at 1316 ("[T]he party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.").

### Conclusion

The plaintiff's motion to exclude evidence relating to a domestic dispute (document no. 35) is granted.  The defendants' motions to exclude evidence relating to the town's denial and revocation of Bourne's building permits, its denial of his subdivision application, and its removal of his gates (document no. 40), and to exclude evidence concerning disputes over the maintenance of the Solomon Harmon Road (document no. 41) are denied.  The defendants' motion to exclude the expert testimony of Ronald Rice (document no. 42) is granted.

The parties have been involved in litigation over a prolonged period of time and have consumed their own resources as well as those of the state and federal courts.  Once the state

court has decided the recently tried case, the parties would be well-advised to step back, reassess their relative situations, and then make good faith efforts to resolve their disputes once and for all.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 9, 2007

cc:  Catherine M. Costanzo, Esquire
     Brian J.S. Cullen, Esquire
     Rachel A. Hampe, Esquire
     Richard D. Sager, Esquire
     Gerald F. Williamson, Esquire

15